## HURON HOLDING CORPORATION et al. v. LINCOLN MINE OPERATING CO.

No. 212. Argued January 13, 1941.—Decided February 3, 1941.

*Mr. Leonard G. Bisco,* with whom *Mr. Daniel Gordon Judge* was on the brief, for petitioners.

184

*Messrs. D. Worth Clark* and *William H. Langroise* submitted for respondent.

186

MR. JUSTICE BLACK delivered the opinion of the Court.

This case involves the effect a federal District Court should give to state court proceedings attaching, while appeal is pending, a judgment previously rendered by the federal court.

Respondent, Lincoln Mine Operating Company, obtained judgment against petitioner, Huron Holding Corporation, in the federal District Court for Idaho. Pending appeal of this judgment to the Circuit Court of Appeals, a New York creditor of Lincoln brought suit on a promissory note against Lincoln in a state court of New York. Upon a showing that Lincoln was an Idaho corporation, the New York court caused a warrant of attachment to issue against Lincoln's New York property.[1] In accordance with New York law,[2] summons upon Lincoln was served by a Deputy Sheriff of Ada County, Idaho. Huron, a New York corporation, answered the warrant of attachment served upon it in New York and admitted that it was the defendant against which judgment in favor of Lincoln had been en-

---

[1] Sections 902 and 903 of Art. 54 of the New York Civil Practice Act authorize courts to issue warrants of attachment against defendants shown to be foreign corporations in actions against them based on "Breach of contract, express or implied, . . ."

[2] Section 233, Art. 25, New York Civil Practice Act.

tered in the Idaho District Court, and that the judgment was still unpaid, subject to its right on an appeal then pending. After the Circuit Court of Appeals had affirmed the Idaho District Court judgment, but before the mandate had been sent down, the New York court rendered judgment against Lincoln, execution was issued, and under the warrant of attachment the New York Sheriff was commanded to obtain satisfaction out of the judgment obligation of Huron to Lincoln. Under compulsion of the New York execution Huron paid and then filed a motion in the Idaho court asking that the federal court's judgment be marked satisfied. Lincoln countered with a motion against National Surety Company, the guarantor on Huron's supersedeas bond in the original action, asking that judgment against the surety be entered in favor of Lincoln. After a hearing on both motions, the District Court made findings of fact and conclusions of law, held that the judgment had been fully satisfied, and declined to enter judgment against the surety.[3] The Circuit Court of Appeals reversed.[4] Because the issues involved are important to the orderly administration of justice in the relationship of state and federal courts, we granted certiorari.[5]

Petitioner contends that the attachment was valid under the New York law, and should have been given full effect by the federal court. It is respondent's contention that (1) the attachment proceedings were void; and (2) even if not void, the District Court should not have given effect to them, for the reason that this would be tantamount to an improper deprivation of Lincoln's right to prosecute its suit in the District Court to full payment of the judgment.

[3] 27 F. Supp. 720.
[4] 111 F. 2d 438.
[5] 311 U. S. 625.

*First.* Here, New York law clearly governed the validity of the attachment proceedings. The Idaho District Court found, and it is not denied, that those proceedings complied with the formal requirements of New York's attachment statutes. But it is contended that at the time of the levy the New York court, under New York law, was without jurisdiction because the Idaho judgment was then pending on appeal and therefore contingent. Respondent points to certain New York cases which lay down the general proposition that "an indebtedness is not attachable unless it is absolutely payable at present, or in the future, and not dependable upon any contingency."[6] But both the District Court and the Circuit Court of Appeals rejected this argument. And indeed the New York court itself necessarily passed upon this question, adversely to respondent's contention. The garnishee's answer in the New York court disclosed that the judgment was pending on appeal, and the New York court's final judgment was not rendered, nor execution issued, until the Idaho judgment had been affirmed. By its action the New York court necessarily decided that the judgment debt was within the scope of New York's attachment laws. And none of the New York authorities to which the respondents direct our attention militate against the soundness of the New York court's ruling. On the contrary, other decisions of the New York courts lead to the conclusion that the judgment—even though on appeal—was sufficiently definite and final to bring it within the New York

[6] *Herrmann & Grace* v. *City of New York,* 130 App. Div. 531; 114 N. Y. S. 1107, 1110, affirmed, 199 N. Y. 600; 93 N. E. 376. Other cases cited by respondent which set out the same general principle are: *Fredrick* v. *Chicago Bearing Metal Co.,* 221 App. Div. 588; 224 N. Y. S. 629, 630; *Reifman* v. *Warfield Co.,* 170 Misc. 8; 8 N. Y. S. 2d 591, 592; *Sheehy* v. *Madison Square Garden Corp.,* 266 N. Y. 44, 47; 193 N. E. 633.

statute.[7] To the same effect, in the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality.[8]

*Second.* Respondent's next contention is that even though Huron was compelled to pay the New York judgment as a result of attachment proceedings fully authorized by the New York statutes, the Idaho federal court not only can but should require a second payment of the same amount. The Circuit Court of Appeals so held. But since Huron, owing a judgment debt to Lincoln, paid it to a creditor of Lincoln under a valid New York judgment, it certainly should not be required to pay it a second time, except for the most compelling reasons. "It ought to be and it is the object of courts to prevent the payment of any debt twice over." [9]

It has not been urged here, nor was it urged in the courts below, that Huron was guilty of any negligence, misconduct or fraud in connection with the New York judgment. It has not been claimed that there was a failure to give Lincoln notice of the New York suit against it. No federal statute or constitutional provision is invoked as supporting the contention that the Idaho federal court was under a duty to disregard the effect of the payment made by Huron under the compulsion

---

[7] *Shipman Coal Co.* v. *Delaware & Hudson Co.,* 219 App. Div. 312; 219 N. Y. S. 628, affirmed, 245 N. Y. 567; 157 N. E. 859. In determining what is the law of a state, we look to the decisions of lower state courts as well as to those of the state's highest court, and follow the same line of inquiry recently pointed out in *West* v. *American Telephone & Telegraph Co.,* 311 U. S. 223. And see *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64.

[8] E. g., *Railway Co.* v. *Twombly,* 100 U. S. 78; *Deposit Bank* v. *Frankfort,* 191 U. S. 499.

[9] *Harris* v. *Balk,* 198 U. S. 215, 226.

of the valid New York judgment. What is contended is that historically federal courts have carved out a rule to protect themselves from interference by state courts, and that a plaintiff in a federal court proceeding has an absolute right to prosecute his suit and collect his judgment in that court—a right which would somehow be arrested or taken away by giving effect to the New York attachment. This contention rests primarily upon a statement of this Court in *Wallace* v. *M'Connell*, 13 Pet. 136, 151. That case, a suit on a promissory note, was begun in the federal District Court for Alabama. While it was pending, a suit for collection of the note, based on its attachment, was instituted in an Alabama state court. In the state court action, though tentative judgment was rendered against the federal court defendant as garnishee, the matter was then stayed for six months because no judgment had yet been rendered against the state court defendant. At this point, therefore, actions involving the same issues were concurrently pending in both the state and the federal court without final determination in either. Before final determination of the state proceedings, the case came on for decision in the federal court. That court overruled defendant's plea based on the state court attachment. On appeal, this Court said: "The plea shows that the proceedings on the attachment were instituted after the commencement of this suit. The jurisdiction of the District Court of the United States, and the right of the plaintiff to prosecute his suit in that Court, having attached, that right could not be arrested or taken away by any proceeding in another Court. This would produce a collision in the jurisdiction of Courts, that would extremely embarrass the administration of justice . . . [The doctrine here announced] is essential to the protection of the rights of the garnishee." The concrete question presented to the Court there appears to have been nothing

more than a situation in which two courts were called upon to litigate the same issues at the same time.[10] Such is not true in this case.

Another case relied on by respondent is *Wabash Railroad Co.* v. *Tourville,* 179 U. S. 322. But that case, involving actions in the courts of two states rather than in a state and a federal court, as here, does not support respondent's contention. In that case this Court did not hold that state laws with reference to attachment and garnishment should not be given effect. On the contrary it based its decision upon a holding by the Missouri appellate court that the Illinois garnishment was void for failure to comply with statutory requirements, and upon a ruling by the Missouri Supreme Court "that the judgment was foreign to Illinois, and therefore not subject to garnishment there."[11] After basing its judgment on these grounds, the Court added a last statement to the effect that "This Court has held that to the validity of a plea of attachment the attachment must have preceded the commencement of the suit in which the plea is made. *Wallace* v. *M'Connell,* 13 Pet. 136." Whatever may be the present day effect of the principle announced in *Wallace* v. *M'Connell* and reasserted in the *Tourville* case,

[10] Cf. *Princess Lida* v. *Thompson,* 305 U. S. 456, 466; *Insurance Company* v. *Harris,* 97 U. S. 331.

[11] If by this the Court meant that under Illinois law such a judgment was not subject to garnishment, the case is nothing more than a holding that one state need not give full faith and credit to a void act of a sister state. But both the Missouri Supreme Court (148 Mo. 614, 624; 50 S. W. 300) and this Court (179 U. S. 322, 327) cited Drake on Attachments (7th ed. 1891) § 625 for the proposition that by the weight of authority a judgment of one court was not subject to attachment in another court. This citation of the "weight of authority" might indicate that this Court was deciding the issue as a question of "general law," under *Swift* v. *Tyson,* 16 Pet. 1. If so, this aspect of the decision is no longer of any weight. *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64.

that principle has no application here. But it is said that a broader principle, stemming from those cases, is here applicable. And it is true that some courts, both state and federal, have adopted the broader rule for which respondent contends.[12] The leading federal case on the subject is *Thomas* v. *Wooldridge,* 23 Fed. Cas. 986, No. 13,918. The rule in that case, as announced by Justice Bradley on circuit, was that "judgments of state and federal courts should not be subject to attachments issued by each other." The reasons there given to support this rule were: the debt was quasi *in custodia legis;* attachments of it would therefore interfere with the court's dignity and prerogatives, excite jealousies and bring about conflicts of jurisdiction; many rights are still left for adjustment after judgment and therefore attachment of a court's judgment would be an inconvenient, dangerous and potentially fraud-ridden interference with judicial proceedings. Justice Bradley was also of opinion that recognition of this rule was practically compelled by *Wallace* v. *M'Connell.*

It is our opinion that no such broad general rule exists. This does not, however, mean that a court which has rendered a judgment is without power to exercise jurisdiction, when properly invoked, to adjudicate newly asserted rights related to the judgment debt. It does mean that later opinions of this Court have undermined the basic reasoning upon which Justice Bradley relied in declaring that judgments in a federal court were never

---

[12] E. g., *Thomas* v. *Wooldridge,* 23 Fed. Cas. 986, No. 13,918; *United States Shipping Board Merchant Fleet Corp.* v. *Hirsch Lumber Co.,* 59 App. D. C. 116; 35 F. 2d 1010; *Elson* v. *Chicago, R. I. & P. Ry.,* 154 Iowa 96; 134 N. W. 547. Contra: *Shipman Coal Co.* v. *Delaware & Hudson Co.,* 219 App. Div. 312; 219 N. Y. S. 628; affirmed, 245 N. Y. 567; 157 N. E. 859; *Fithian* v. *New York & Erie R. Co.,* 31 Pa. 114. And compare *McNish* v. *Burch,* 49 S. D. 215; 207 N. W. 85, with *Hardwick* v. *Harris,* 22 N. M. 394; 163 P. 253.

subject to attachment elsewhere. For it is now settled that attachment is wholly the creature of, and controlled by, the law of the state; property and persons within the state can be subjected to the operation of that local law; power over the person who owes a debt confers jurisdiction on the courts of the state where the writ of attachment issues; and by reason of the constitutional requirement that full faith and credit be given the valid actions of a state, courts of one state must recognize valid attachment judgments of other states.[13] And under congressional enactment federal courts must also give full faith and credit.[14] These later decisions are but a recognition of the greatly developed statutory use of attachment by the states, a development brought about by the increased mobility of persons and property and the expanded area of business relationships. Whatever may have been the necessity for the rule in other times, it does not fit its present day environment.

Further, we do not here, as in *Wallace* v. *M'Connell*, have a case in which two courts are proceeding in the same matter at the same time. The New York court has proceeded under New York law to final judgment. It has compelled obedience to its judgment. The New York proceedings did not arrest or take away the right of Lincoln to try out its issues with Huron in the federal court for Idaho. Those issues had already been tried and determined in that court, and its jurisdiction to adjust and adjudicate newly asserted rights relating to the judgment had not been invoked. There was therefore no possibility of collision between the two courts, for similar issues were not pending before them at the same

[13] E. g., *Harris* v. *Balk*, 198 U. S. 215, 222; *Louisville & Nashville R. Co.* v. *Deer*, 200 U. S. 176, 178; *Baltimore & Ohio R. Co.* v. *Hostetter*, 240 U. S. 620.

[14] 1 Stat. 122, as amended, 28 U. S. C. § 687. And see note 17, *infra*.

time. In fact, far from colliding with the Idaho court, the New York court accepted as final that court's determination of the issues that it had passed on. For the suit in New York was based on the Idaho judgment, and not on the original cause of action, and "A cause of action on a judgment is different from that upon which the judgment was entered." [15]

Both the Idaho federal court and the New York state court decided matters within the respective authority of each. To give effect to the judgment rendered in the New York attachment proceedings cannot, in any manner, interfere with the jurisdiction of the Idaho court. While the Idaho court did have authority to issue an execution for the collection of an unpaid judgment, it would not have enforced an execution for the benefit of Lincoln if the judgment had previously been paid directly to Lincoln. Nor should it issue an execution when the money was paid to Lincoln's creditors by reason of valid attachment proceedings. For this would be to exercise the jurisdiction of a federal court to render ineffective that protection which a garnishee should be afforded by reason of having obeyed a judgment rendered by a state in the exercise of its constitutional power over persons and property within its territory.[16] To take such a step would constitute a denial of that full faith and credit which a federal court should give to the acts of a state court.[17]

The District Court properly ordered that its judgment be marked satisfied, and correctly refused to render judgment on the supersedeas bond. The judgment of the Circuit Court of Appeals is reversed, and the judgments of the District Court are affirmed.

*Reversed.*

---

[15] *Milwaukee County* v. *M. E. White Co.*, 296 U. S. 268, 275.

[16] Cf. *United States* v. *Klein*, 303 U. S. 276, 281–282.

[17] *Pennoyer* v. *Neff*, 95 U. S. 714, 733; *Goldey* v. *Morning News*, 156 U. S. 518, 521; *Cooper* v. *Newell*, 173 U. S. 555, 567–568; *Davis* v. *Davis*, 305 U. S. 32, 39–40.