The judgment of the District Court is affirmed.

### In re ST. CHARLES HOTEL CO.
No. 9088.

Circuit Court of Appeals, Third Circuit.

Argued June 17, 1946.

Decided Aug. 29, 1946.

Writ of Certiorari Denied Jan. 6, 1947.

See 67 S.Ct. 492.

Charles Gottlieb, of New York City (Thomas H. Munyan, of Atlantic City, on the brief), for appellant.

George Furst, of Newark, N. J. (Furst & Furst and Samuel M. Hollander, all of Newark, on the brief), for petitioning creditors-appellees.

Before BIGGS and O'CONNELL, Circuit Judges, and KALODNER, District Judge.

KALODNER, District Judge.

This is an appeal from two orders made by the District Court on October 27, 1945, the one denying the application of the Appellant herein to intervene and to file an answer to the involuntary petition in bankruptcy, the second adjudging the St. Charles Hotel Company a bankrupt. Appellant is a Receiver appointed by the Court of Chancery of the State of New Jersey to take charge of the assets of the St. Charles Hotel Company.

A chronological statement of the facts is as follows:

On November 29, 1944, certain holders of first mortgage bonds of the St. Charles Hotel Company (hereinafter referred to as "Debtor") jointly filed in the Chancery Court of the State of New Jersey a bill praying for the appointment of a Receiver of the Debtor. A rule was obtained, returnable December 12, 1944, to show cause why a temporary receiver should not be appointed. Before the return date, on December 8, 1944, the Debtor filed a voluntary petition for reorganization pursuant to the provisions of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. On the same day, the petition was approved by the United States District Court of New Jersey as properly filed and one Aaron

Smith was appointed Trustee for the Debtor and its assets.

Answers to the voluntary reorganization petition were filed on January 8, 1945, by two of the complainants in the Chancery Court action, and on January 10, 1945, a rule to show cause why the petition should not be dismissed was issued, returnable January 12, 1945. The objections raised in the answers were sustained,[1] and on March 26, 1945, an order was entered dismissing the petition.

On March 27, 1945, one Edward S. Ladin, owner of a $500 first mortgage bond moved for leave to intervene in the Chapter X proceedings and for a rehearing of the issues raised by the answer to the petition, and to vacate the order of dismissal of March 26th.

On April 4, 1945, Harry Cassman, the Appellant herein, was appointed, upon consent of the Debtor, as Receiver by the Chancellor of New Jersey in the proceedings instituted in the Chancery Court of that State. However, because the Ladin application for rehearing was pending in the reorganization court, the Debtor's assets were not turned over by the Trustee to the New Jersey Receiver.

On April 30, 1945, the Ladin application was formally denied by the District Court, and on the same day the Trustee was ordered to relinquish custody of the Debtor's assets in his possession. Notice of appeal from the order of March 26, 1945, and the two orders of April 30, 1945 was served on May 1, 1945. However, Ladin earlier obtained from this Court, on April 28, 1945, a rule to show cause why the Trustee should not be stayed from transferring to the Debtor, or the Receiver, the Debtor's property in his custody. On May 18, 1945, that rule was made permanent, the Trustee being enjoined from transferring the Debtor's property pending the hearing and determination of the appeal.

On June 13, 1945, this Court affirmed the District Court's orders of March 26 and April 30, 1945.[2]

On June 14, 1945, Ladin filed notice of his intention to apply to the Supreme Court of the United States for a writ of certiorari, thereby staying the mandate of this Court.[3]

On July 2, 1945, three first mortgage bondholders, upon leave of court, filed the involuntary petition in bankruptcy here in controversy. The single act of bankruptcy set forth in the petition was the appointment of the Receiver on April 4, 1945, in the Chancery Court proceeding in the State of New Jersey. On July 17, 1945, the appellant filed his petition for leave to intervene in the bankruptcy proceeding and to answer.

On October 15, 1945, the Ladin application for a writ of certiorari was denied.[4] On October 27, 1945, the District Court denied appellant's petition for leave to intervene in the bankruptcy proceeding and also adjudicated Debtor bankrupt.

The Appellant has chosen to submit this appeal solely on the sufficiency of his contention that the District Court had no jurisdiction to entertain the involuntary petition in bankruptcy for the reason that the Chapter X proceeding was incomplete and the Debtor's property was in custodia legis at the time of the filing of the petition. It is patent, of course, that if an involuntary petition in bankruptcy could not have been filed until the denial by the Supreme Court of the Ladin petition for a writ of certiorari on October 15, 1945, the appointment of a Receiver in the state court would not have been an "act of bankruptcy" which occurred within four months prior to the filing of the involuntary petition. 11 U.S.C.A. § 21.

We are of the opinion that the District Court properly dealt with the involuntary petition in bankruptcy here involved.

The provisions of the Bankruptcy Act lay down no specific rule applicable to this set of facts. An involuntary petition in bankruptcy may be filed at any time, but obviously whether the debtor is adjudicated

---

[1] D.C.N.J.1945, 60 F.Supp. 322.

[2] 3 Cir., 149 F.2d 645.

[3] Pursuant to our Rule 38.

[4] Ladin v. Hurwith, 326 U.S. 738, 66 S.Ct. 48.

bankrupt, or the petition is dismissed, depends entirely upon the sufficiency of the petition in law and equity.

Of course, the law relating to reorganizations, gives to the reorganization court exclusive jurisdiction upon the filing of a petition therein, and such jurisdiction may become conclusive.[5] Such paramount jurisdiction is further supplemented by the statutory provisions for discretionary and automatic stays of other proceedings.[6]

However, those provisions, in our opinion, do not relate to the power of a bankruptcy court to receive an involuntary petition in bankruptcy: the petition is not ab initio invalid; rather, they relate to the exercise of the bankruptcy court's jurisdiction over the debtor and his property. The bankruptcy court is a court of equity, and even where its jurisdiction has not been pre-empted by direct order, there is no reason why it may not take cognizance of an independent reorganization proceeding. Although the objectives of bankruptcy and of reorganization are at opposite poles, nevertheless, under certain circumstances, a bankruptcy court could effectively destroy the aims of a reorganization proceeding.[7]

In any event, it cannot be overlooked that we do not have here a "clash of jurisdiction" between a reorganization court on the one hand, and a bankruptcy court on the other. The reorganization court had dismissed the petition before it, thereby relinquishing its jurisdiction. The decision was final, and that finality was not disturbed merely by the taking of an appeal.[8]

The stay order issued by this Court, enjoining the Trustee "from transferring or conveying any of the property of the debtor now in his possession, to the debtor, or to any receiver appointed for the debtor or to any other person", did not have any affirmative effect collateral to the District Court's decree of dismissal, but merely cut off that Court's power to carry out its order. The stay order did not revest in the District Court the jurisdiction it had renounced.

Of course, any action by the District Court on the bankruptcy petition would necessarily be circumscribed by the existence of this Court's order with respect to the debtor's property in the hands of the Trustee. Also, the bankruptcy court would naturally be expected to deal with the petition before it accordingly, as a court of equity, which, in final analysis, it is. But again, there is nothing inherent in that order which prevented the bankruptcy court from receiving and considering the bankruptcy petition, and indeed there was nothing inconsistent, in law or in equity, in its having done so.

The learned District Judge, we think, dealt with the involuntary petition in bankruptcy equitably. By permitting the petition to remain in a state of suspended animation until disposition of the Ladin application for a writ of certiorari any possible "clash of jurisdiction" with respect to the res was avoided. The denial of the Ladin application freed the res of equitable restraints and it became subject to disposition by the bankruptcy court.

It may be observed that unfortunately the settlement of the Debtor's estate has been beset by numerous obstacles, purely technical in nature. It is indeed regrettable that minor interests selfishly motivated should have caused the delays.

Affirmed.

Judge O'CONNELL participated in the consideration and decision of this case but was unable to collaborate in the preparation of the opinion.

[5] 11 U.S.C.A. §§ 511 and 549.

[6] eg. 11 U.S.C.A. §§ 513 and 548.

[7] In Duggan v. Sansberry, 66 S.Ct. 657, it was assumed that if the reorganization court had not enjoined a sale ordered by the bankruptcy court, the latter would have been correct in not ordering the sale halted.

[8] See Lincoln Mine Operating Co. v. Huron Holding Corp., 9 Cir., 1940, 111 F.2d 438, 439, rev'd. on other grounds, 1941, 312 U.S. 183, 61 S.Ct. 513, 85 L. Ed. 725; Laughlin v. Berens, 1942, 75 U. S.App.D.C. 409, 128 F.2d 23, 26; United States v. Mancuso, 3 Cir., 1943, 139 F. 2d 90, 92; Rule 73(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c; 11 Cyclopedia of Federal Procedure (1944) Section 5891.