**FIDELITY MORTGAGE INVESTORS,**
**Plaintiff,**

v.

**FIRST NATIONAL CITY BANK as Indenture Trustee, Defendant-Counterplaintiff,**

v.

**BANK LEUMI TRUST COMPANY et al.,**
**Additional Defendants on the Counterclaim.**

**No. 74 Civ. 2818 (JMC).**

United States District Court,
S. D. New York.

Dec. 31, 1974.

---

Satterlee & Stephens, New York City, and Milam, Martin & Ade, Jacksonville, Fla. (Henry J. Formon, Jr., New York City, and John H. Wilbur, Jacksonville, Fla., of counsel), for plaintiff.

Shearman & Sterling, New York City (Richard F. Russell, New York City, of counsel), for defendant First Nat. City Bank.

## MEMORANDUM DECISION

CANNELLA, District Judge:

This action for a declaratory judgment pursuant to 28 U.S.C. § 2201 (and certain other relief, *infra*) is presently before the Court on plaintiff's application for a preliminary injunction. Plaintiff, Fidelity Mortgage Investors [hereinafter "the Trust"] (a real estate investment trust), seeks an order restraining the defendant, First National City Bank [hereinafter "the Trustee"], from taking any steps which would be detrimental to the financial integrity or stability of plaintiff, including any action to accelerate any obligation of plaintiff which has not already matured pursuant to the terms of the instrument evidencing or creating such obligation, and from taking any action which is predicated upon the existence of a default with respect to any such obligation. The application is alternatively brought under the provisions of Fed.R. Civ.P. 65(a) and 28 U.S.C. § 2361. As the Court finds the relief prayed for wholly unjustified and unwarranted, this application has been denied in its entirety. *See,* Endorsement dated December 24, 1974.

The controversy giving rise to this lawsuit revolves around the question of whether or not there exists any default by plaintiff in the payment of the principal or interest on any of its Senior In-

debtedness. The relevance of this issue (the existence of defaults in senior indebtedness) is that under the terms of the December 1970 Trust Indenture a default by the Trust in the payment of any senior indebtedness would, under certain defined circumstances (discussed *infra*), constitute an event of default which, in turn, would allow the Trustee, or, alternatively, not less than 25% of the subordinated debenture holders, to accelerate and declare immediately due and payable the principal of all of the debentures issued under the Indenture. Such acceleration would, of course, trigger the exercise of similar acceleration remedies by the holders of the Trust's other debt securities and, in all probability, result in the financial demise of the Trust. It is the exercise of such acceleration rights by the Trustee and/or the subordinated debenture holders which plaintiff seeks to prevent by the instant application. (The resolution of this dispute, of course, rests upon the Court's construction and application of a lengthy trust indenture, a document which attempts compliance with the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa et seq., as well as the Model Debenture Indenture Provisions (promulgated by the American Bar Foundation). *See also*, 3 CCH Fed.Sec.L.Rep. ¶ 43,501 et seq. (Suggested Provisions for Corporate Mortgages and Indentures). As the economy has been "good" for the past several decades, courts have not been called upon to construe such indentures or apply the federal trust indenture statute with any frequency. However, given the present economic forecast, such judicial undertakings will now, in all likelihood, occur more often.) In this regard, the Trust Indenture dated December 1, 1970 between the Trust and the Trustee (which document controls the rights and liabilities, as well as the relationship, of the parties hereto), defines Senior Indebtedness as (§ 1.01):

the principal of (and premium, if any) and accrued and unpaid interest on (a) indebtedness of the Trust, whether outstanding on the date of execution of this Indenture or thereafter created, incurred or assumed, for the payment of which the Trust is responsible or liable, and which is for (i) money borrowed from or guaranteed to others, (ii) purchase money indebtedness evidenced by notes or similar instruments or (iii) obligations for rental payments on real property leases but only to the extent such obligations are enforceable against the lessee under such real property leases, and (b) renewals, extensions and refundings of any such indebtedness; *unless in the instrument creating or evidencing the same or pursuant to which the same is outstanding, it is provided that such indebtedness, or such extension or refunding thereof, is subordinate to any other indebtedness of the Trust or is not superior in right of payment to the Debentures.* [Emphasis added.]

In June of this year, the Trust transmitted to the Trustee, pursuant to the terms of the December 1970 Indenture, an interest payment of approximately $104,000 which was due and payable to the holders of the subordinated debentures issued pursuant to the terms of that Indenture on June 1, 1974. The Trustee, however, having adopted the position that there existed or might probably exist defaults with respect to the Trust's Senior Indebtedness, withheld payment of this interest to the debenture holders. In so doing, it asserted reliance upon the provisions of § 13.02 of the Trust Indenture. (*See*, Trustee's letter of June 3, 1974, Ex. A to the Complaint.)[1]

---

1. In viewing the actions of the Trustee, it must be remembered that under the terms of the Indenture (§ 8.01(b)) :

In case an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise such of the rights and powers vested in it by this Indenture, and *use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.*

*See*, 15 U.S.C. § 77*ooo*(c).

No payment on account of principal (and premium, if any) . . . or interest on the Debentures shall be made if, at the time of such payment or immediately after giving effect thereto, (1) there shall exist a default in any payment with respect to any Senior Indebtedness or (2) there shall have occurred an event of default (other than a default in the payment of amounts due thereon) with respect to any Senior Indebtedness, as defined therein or in the instrument under which the same is outstanding, permitting the holders thereof to accelerate the maturity thereof, and such event of default shall not have been cured or waived or shall not have ceased to exist. . . .

. . . .

In the event that, notwithstanding the foregoing, any payment or distribution of assets of the Trust of any kind or character, whether in cash, property or securities, prohibited by the foregoing, shall be received by the Indenture Trustee or the Holders of the Debentures before all Senior Indebtedness is paid in full, or provision is made for such payment in money or money's worth in accordance with its terms, such payment or distribution shall be paid over or delivered to the holders of Senior Indebtedness or their representative or representatives, or to the indenture trustee or trustees under any indenture pursuant to which any instruments evidencing any Senior Indebtedness may have been issued, as their respective interests may appear, for application to the payment of all Senior Indebtedness remaining unpaid to the extent neces- sary to pay all Senior Indebtedness in full in money or money's worth in accordance with its terms, after giving effect to any concurrent payment or distribution to or for the holders of such Senior Indebtedness.[2]

Plaintiff, on the other hand, then asserted, and continues to maintain, that, under the terms of the Indenture, it was not presently in default or, alternatively, was presently unable to determine whether or not it was in default with respect to any of its Senior Indebtedness owing to the fact that the validity of such senior claims are presently the subject of assertedly unresolved litigation and, therefore, that payment of the June interest to the subordinated debenture holders was proper. When the Trustee, upon being made aware of the Trust's position, further declined to make the involved payment, the Trust commenced this litigation, asking that the Court declare that no defaults in Senior Indebtedness are extant and that we direct the Trustee to make payment of the involved interest. In similar fashion, the Trustee (as counterplaintiff), in an attempt to avoid future liability to senior debt holders, as well as in an effort to enjoy the benefits of *res judicata* with regard to the Court's determination concerning the existence of defaults in senior debt, has interposed a counterclaim joining numerous other banks (which are claimed by the Trustee to hold indebtedness senior to that represented by the December 1970 Indenture) as parties and in which it seeks, in the nature of interpleader (Fed.R.Civ.P. 22 and 28 U.S.C. § 1335), that the Court ascertain the rights and liabilities of all of these parties to the involved interest payment. This, of

As to the proper role and function of an indenture trustee, *see generally*, Johnson, Default Administration of Corporate Trust Indentures, 15 St.Louis U.L.J. 203 (1970); 15 St.Louis U.L.J. 374 and 15 St.Louis U.L.J. 509 (1971).

2. Provisions such as that found in § 13.02 are not unusual. As Fletcher points out, the Indenture may contain "a complete block on payment of subordinated indebtedness while senior indebtedness is outstanding. . . . Subordination provisions . . . often provide that in case the holder of subordinated debt receives any payments to which he is not entitled by reason of the subordination provisions, such holder shall pay the same to the holders of senior indebtedness in accordance with their respective rights." 19 W. Fletcher, Cyclopedia of the Law of Private Corporations, § 9164.2 at 384–85 (1959 rev, Maland).

548

course, again entails a decision by the Court as to which, if any, senior debt securities of the Trust are presently in default. In furtherance of such interpleader, the Trustee has paid the $104,000 interest payment in the treasury of this Court.

As was indicated above, plaintiff brings the present application under Rule 65 of the Fed.R.Civ.P. and § 2361 of Title 28, which section affords the Court the authority to enjoin overlapping *judicial proceedings* which might adversely affect its ability to equitably distribute a *res* which has been paid in to court pursuant to the interpleader statute, 28 U.S.C. § 1335. (Here, the Trustee's counterclaim is in the nature of statutory interpleader.) In pertinent part, § 2361 provides that:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, *a district court may* issue its process for all claimants and *enter its order restraining* them from *instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action* until further order of the court. [Emphasis added.]

Thus, while the statute (by its terms) affords the Court power to enjoin other *judicial proceedings* when such relief is necessary "to insure the effectiveness of the interpleader remedy," to prevent a "multiplicity of actions" or to otherwise reduce "the possibility of inconsistent determinations or the inequitable distribution of the fund," the wording of § 2361 renders it clearly inapplicable to the matter at bar. 7 C. Wright & A. Miller, Federal Practice and Procedure § 1717 at 462 (1972). *Cf.*, 3A J. Moore, Federal Practice ¶ 22.04[3] at 3031 (2 ed. 1974) (indicating the intent of Congress in promulgating § 2361 to be "as an amendatory exception to the general proscription of Section 2283," the federal anti-injunction statute which would otherwise bar the court from enjoining state *judicial proceedings*).

On the instant motion, the plaintiff does not seek an injunction against other judicial proceedings, but rather asks that the Court place restrictions upon the exercise of the acceleration remedies specified in the December 1970 Indenture (§ 7.02). Thus, it must be concluded that the relief sought is not of a nature cognizable under § 2361. *See* discussion, *supra*. Additionally, the present application goes not to the fund now in the possession of the Court or to its equitable distribution, but instead, bears only upon the rights and liabilities of the First National City Bank as Indenture Trustee and the holders of the debentures issued thereunder. "Here, the scope of the litigation, in terms of parties and claims, [is] vastly more extensive than the confines of the 'fund' . . . . In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533–534, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967). In any event, the *res* now before the Court can not be viewed as being placed in jeopardy by the simple exercise of such acceleration rights (if and when the exercise of the acceleration remedy results in the commencement of judicial foreclosure proceedings, relief may then be warranted so as to preserve equitable distribution of the *res*). *Cf.*, Imperial Sugar Co. v. Societe Generale, 233 F. Supp. 445 (S.D.N.Y.1964).

In short, the simple fact that the Trustee has interposed a counterclaim in the nature of statutory interpleader which concerns itself with the existence of defaults with respect to the Senior Indebtedness of the Trust and which seeks a direction as to the proper allocation of monies which have been paid into court (the June 1974 interest on the subordinated debentures) cannot, in the opinion of this Court, now be invoked by the Trust in order to bootstrap itself within the provisions of § 2361. No other *judicial proceeding* affecting the

*res* which might properly be subject to restraint by this Court now exists or is threatened and for the Court to find "that the tail be allowed to wag the dog in this fashion," would exceed all reasonable and contemplated bounds foreseeable by the Congress in its promulgation of § 2361. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. at 535, 87 S.Ct. 1199.

■ Thus, upon the foregoing analysis, any preliminary injunction which the Court might now issue in plaintiff's favor must properly comport with the provisions of Rule 65(a) of the Fed.R. Civ.P. and the well-recognized standards for the entry of relief thereunder. In order to prevail, the Trust must carry the burden of clearly demonstrating either: (1) probable success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits of the litigation and the tipping of the balance of hardships sharply in its favor. *Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 536 (2 Cir. 1974) (and the cases there cited). In the view of this Court, plaintiff has failed to sustain either of these tests with proof concerning the absence of any default with regard to its Senior Indebtedness.

In addition to § 1.01 of the December 1970 Indenture, *supra*, which defines Senior Indebtedness and § 13.02, *supra*, which charts the course which must be followed by the Trustee in instances where a default or an event of default has occurred with respect to such Senior Indebtedness, § 7.01 of the Indenture defines the events of default which may serve to trigger the rights of the Trustee and the subordinate debenture hold-

ers to accelerate their obligations under § 7.02 of the Indenture,[3] as well as the obligations of the Trustee under § 13.02. Particularly pertinent herein is the event of default specified in § 7.01(4) of the Indenture:

> *"Event of Default"*, wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be occasioned by the provisions of Article Thirteen or be voluntary or involuntary or *be effected by operation of law pursuant to any judgment, decree or order of any court* or any order, rule or regulation of any administrative or governmental body) [emphasis added]:
>
> .   .   .   .
>
> (4) the happening of any default under any other indenture or instrument under which the Trust shall have outstanding any Senior Indebtedness, or which evidences any outstanding Senior Indebtedness, continuing beyond the expiration of the applicable grace period (if any) provided for therein, of which default written notice shall have been given to the Trust by the Indenture Trustee or to the Trust and to the Indenture Trustee by the holders of a majority in aggregate principal amount of the Debentures at the time outstanding; *provided, however,* that if such default under such other indenture or instrument shall be remedied or cured by the Trust or be waived by the holders of such Senior Indebtedness, in each case as may be permitted by such other indenture or instrument, then the Event of Default hereunder by reason thereof shall be deemed likewise to have been thereupon remedied, cured or waived without further action upon

---

3. Section 7.02 of the Indenture provides, in pertinent part, that:

    If an Event of Default occurs and is continuing, then and in every such case the Indenture Trustee or the Holders of not less than 25% in principal amount of the Debentures Outstanding may declare the principal of all the Debentures to be due and payable immediately, by a notice in

writing to the Trust (and to the Indenture Trustee if given by Debentureholders), and upon any such declaration such principal shall become immediately due and payable.

*See also*, Model Debenture Indenture Provisions § 502 (1965); 3 CCH Fed.Sec.L.Rep. ¶ 43,527.

the part of either the Indenture Trustee or any of the Debentureholders

. . . .

See also, Model Debenture Indenture Provisions § 501 (1965); 3 CCH Fed. Sec.L.Rep. ¶ 43,525.

■ Hence, in order for us to determine the "merits" of plaintiff's claim for purposes of the injunctive relief standard set forth above, it becomes necessary for the Court to determine the reasonableness of the Trust's position that no event of default has occurred with respect to its Senior Indebtedness. In this regard, the Court's attention is properly focused upon two (of the several) actions which have been commenced against the Trust by the holders of debt instruments which are clear on their face and which are not made subject or subordinate to the subordinated debentures issued pursuant to the December 1970 Indenture.[4] One such action, Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors, 74 Civ. 148 (S. D.N.Y.), has resulted in the entry of a judgment in excess of $1,000,000 against the Trust (February 27, 1974) (Frankel, D.J.) and that judgment is presently on appeal to the Second Circuit (Docket No. 74–1432) (appeal argued Oct. 22, 1974). The other action, Mid-Jersey National Bank v. Fidelity Mortgage Investors, 74–427 (D.N.J.), has also resulted in the entry of a judgment against the Trust (in the sum of $240,000) on the note there before the Court and that judgment, like that of this Court, is presently pending appeal in the Third Circuit (Docket Nos. 74–1544 and 74–1545). The Trust, however, notwithstanding the entry of these two judgments, asserts in support of its claim that "[i]n each of the lawsuits set forth above, FMI [the Trust] has concluded that it is not responsible or liable for the payment of the principal or interest, or both, claimed in such suits

and, accordingly, FMI, based upon the terms and provisions of the Indenture, has determined that such claims do not constitute Senior Indebtedness under the Indenture at this date." Wilbur Affidavit of Nov. 27, 1974 at 3 ¶ 9. See also, Watson Affidavit of Nov. 26, 1974 at 3 ¶ 9. This position is spurious and can not be given cognizance by the Court under settled principles of law.

Professor Moore well states that "[t]he federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel, unless the appeal removes the entire case to the appellate court and constitutes a proceeding de novo. This is true even if the appeal is taken with a stay or supersedeas; these suspend execution of the judgment, but not its conclusiveness in other proceedings." 1B J. Moore, Federal Practice ¶ 0.416[3] at 2252–53 (2 ed. 1974) (footnotes omitted).

> [I]n the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality.

Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189, 61 S. Ct. 513, 515, 85 L.Ed. 725 (1941). Cf. Restatement (Second) of Judgments § 41, comment f at 5–6 (Tent. Draft No. 1, 1973). In the opinion of this Court, it borders on the ridiculous for the Trust to now assert that it "has concluded that it is not responsible or liable" upon these senior debts and that it "has determined that such claims do not constitute Senior Indebtedness." The Trust might just as well add that it has concluded that the earth is flat or that the Trust Indenture is void for want of consideration, as the Court finds that what the Trust "concludes" or "determines" is

---

4. In this regard, the emphasized portion of § 1.01, *supra*, should be read in connection with the following provision of § 13.01.

    All Debentures issued hereunder shall, to the extent and in the manner hereinafter

set forth, be subordinated and subject in right of payment to the prior payment in full in money or money's worth of all Senior Indebtedness.

wholly irrelevant and unavailing in light of the judicial pronouncements to the contrary. This plaintiff is no more able to alter the rules of law to serve its self interest than it is free to amend the laws of nature.

Our conclusion that the judgments now extant are final and should be given cognizance is buttressed by Judge Frankel's unequivocal statements, concerning the claim before him, that the Trust had "followed a course of delays and refined technicalities to avoid judgment for a large obligation which is clear, not genuinely contestable, and not justly escapable on any ground whatsoever" and that, as to such claim, "[i]t is clear there was and is no meritorious defense." Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors, 74 Civ. 148 (S. D.N.Y., Feb. 27, 1974) (Mem. op. at 1 and 3), appeal pending, No. 74–1432 (2 Cir.).

Hence *unless and until* the judgments entered upon the decisions of Judge Frankel and our brother in New Jersey are *both* reversed or vacated by the appellate courts, they continue to constitute valid and binding adjudications. As such, in and of themselves, they stand as uncured events of default (§ 7.-01) in Senior Indebtedness (§ 1.01) of the Trust under the provisions of the December 1970 Indenture. Thus, in

light of the existence of these judgments and of their impact under the terms of the Indenture, the Court is secure in the conclusion that plaintiff has failed to demonstrate *either* probable success on the merits or the existence of serious questions going to the merits of this lawsuit, and, indeed, viewing the present state of affairs, the claim here asserted seems likely to be possessed of little merit whatsoever. Upon the inquiry of the Court in connection with the present application, it appears more than likely that the Trusteee acted properly under the terms of the December 1970 Indenture in withholding payment of the June 1974 interest to the subordinated debenture holders and that the probable resolution of this litigation will entail only a determination of which of the debt security holders of the Trust are now entitled to the *res* presently before the Court.[5]

As the Court, by an Endorsement dated December 24, 1974, has heretofore denied the instant application in all respects and has vacated and dissolved the temporary restraining order and stay issued on December 2, 1974, as continued by the further orders of the Court, no order of the Court is now necessary. This memorandum decision will, however, stand as the Court's findings and conclusions on the present motion pursuant to Fed.R.Civ.P. 52(a).

---

5. Having reached the foregoing conclusion, it is unnecessary for the Court to consider the questions of "irreparable injury" or "tipping of the balance of hardships." However, were the Court to do so, it is noteworthy that the Trustee has indicated that it "has no present intention . . . of exercising its right under § 7.02 of the Indenture to declare the principal of all the Debentures to be due and payable immediately or of taking any action to recover such indebtedness." Jaworski Affidavit at 6 ¶ 13. In light of this representation, the settled principle that

> [t]he issuance of an injunction is not justified by the mere fact that irreparable harm may possibly ensue if restraint is not imposed. The plaintiff must make out a case for the issuance of the injunction

by demonstrating that there is a clear present need for it. Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties,

would well be invoked. Hershey Creamery Co. v. Hershey Chocolate Corp., 269 F.Supp. 45, 59 (S.D.N.Y.1967), quoting from, Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267–268 (E.D.La. 1967). *See also,* Cortright v. Resor, 447 F.2d 245, 254 (2 Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972); General Fireproofing Co. v. Wyman, 444 F.2d 391, 393 (2 Cir. 1971); O'Reilly v. Wyman, 305 F.Supp. 228, 231 (S.D.N.Y.1969) (per Moore, C. J.).