Nicholas M. Pette, J.
This is a petition by Intermediate Credit Corporation (Intermediate), pursuant to section 6221 of the Civil Practice Law and Rules to vacate or discharge an attachment, void the levy on two airplanes identified in the petition, direct the property be turned over to the petitioner and to increase the amount of the undertaking furnished by the respondent Chef’s Orchid Airline Caterers, Inc. (Chef’s).
*523 The petitioner is the conditional vendor of the airplanes. Respondent Overseas National Airways, Inc. (Overseas) is the conditional vendee. The contract of sale is dated December 21,1962, and was filed with the Federal Aviation Agency on February 13, 1963. Respondent Chef’s is a creditor of Overseas. On October 7,1963, Chef’s obtained an order of this court directing the Sheriff to attach and keep so much of the property within his jurisdiction which Overseas has or may have at any time before final judgment in the action as will satisfy Chef’s demand of $40,133.67, together with interest and related costs. The Sheriff of the County of Queens levied on the two airplanes on the same date.
Section 6202 of the Civil Practice Law and Rules provides that any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment, and that for the purpose of applying the provisions to attachment references to a “ judgment debtor ” in section 5201 shall be construed to mean “defendant”. Subdivision (b) of section 5201 provides that a money judgment may be enforced against any property which could be assigned or transferred whether it consists of a present or future right or interest and whether or not it is vested. Pursuant to these sections any property of Overseas which could have been assigned or transferred was attachable. Overseas, however, had no right to assign or transfer title to the airplanes. The title remained in the conditional vendor, Intermediate. Overseas did have the right of possession and use and the right to acquire title subject to the terms and conditions of the contract of sale. These rights could be lost by its default in the provisions of the contract. Even after default, Overseas had certain equitable and legal rights (see, e.g., the provisions of the Uniform Conditional Sales Act; Personal Property Law, art. 4).
The rights that Overseas did have, including that of possession, were capable of being transferred. Although the contract provided that Overseas ‘ ‘ shall not * * * assign ’ ’ or “transfer” the agreement or equipment without consent of Intermediate, it did not provide that the agreement was not assignable or that it would be null and void if ,such an assignment or transfer took place. In ‘ ‘ the absence of language clearly indicating that a contractual right thereunder shall be nonassignable, a prohibitory clause will be interpreted as a personal covenant not to assign.” (Allhusen v. Caristo Constr. Corp., 303 N. Y. 446, 450.)
Accordingly, so long as Overseas retained the right to possession of the airplanes, they were attachable by its creditors. *524 (Of. Recommendation Concerning Levy of Execution on Interests of Conditional Vendees and Chattel Mortgagors, Eighth Annual Report of N. Y. Judicial Council, 1942, pp. 409, 412.)
Petitioner shows no grounds for vacating the warrant of attachment. It is clear that Chef’s had the right to attach any property of Overseas up to the amount of its claim against the latter. Whether it had a right to levy upon the airplanes, however, depends on whether or not Overseas had the right to possession of those planes at the time they were levied upon. If the levy was valid when made it will not be voided. This is not to say that the vendor cannot recover possession of the planes if Overseas lost its right to possession at any time after the levy. The planes must be released therefrom since Chef’s as a creditor of Overseas could have no more rights in them than Overseas possessed.
Paragraph 16 of the conditional sales contract provides the conditions under which Overseas could lose its rights to the possession of the airplanes. Pursuant to this paragraph it was necessary for (1) Overseas to fail to pay an installment within five days of its due date, and (2) for Intermediate to give written notice of the default to Overseas, cmd (3) for Overseas to fail to cure its default within five days after receipt of the aforesaid notice, cmd (4) for Intermediate to exercise its right to take possession of the planes or terminate the agreement. The contract provided, however, that Intermediate did not have to give notice or demand prior to exercising these latter rights. Until all four of these conditions were met, Overseas retained the right to possession.
It is not controverted that Overseas failed to pay the installment due on September 21, 1963, and that Intermediate gave written notice of the default. What is disputed is the date on which Overseas received this written notice. The letter is dated October 1, 1963, and petitioner claims that Overseas received it on the same date. Chef’s claims that notice was not received before October 3 and that Overseas would have had a right to cure its default until October 8. The court notes that apparently two copies of the letter were mailed, one to Overseas at its Washington office and the other at its New York office at Idlewild Airport. The registered mail receipt shows delivery of the letter addressed to Overseas at Idlewild but does not show the delivery date. It bears a postmark of October 3, 1963, but this could have been marked by the post office when the latter agency was returning the receipt to the sender in Washington, D. 0. It is not necessary, however, for the court to decide this issue since there is no proof that Intermediate exercised or *525 attempted to exercise its right to take possession of the airplanes or terminate the agreement prior to the institution of the present proceeding and certainly not prior to the levy of October 7, 1963. The levy, therefore, was valid and lawful when made.
By means of this proceeding Intermediate has clearly expressed its intention to exercise its right to repossess the airplanes. Indeed since the planes are now subject to the control of the Sheriff, there is probably no other way that Intermediate could express its said intention. Moreover since five days have now elapsed since the receipt of notice of default by Overseas, all of the conditions for repossession of the airplanes have been met Thus Overseas no longer has the right to possession and Chef’s no longer has the right to have these airplanes held in attachment. The petition is accordingly granted to the extent of releasing the two airplanes designated as Douglas DC7-N314A and Douglas DC7-N-322A from attachment and is in all other respects denied. Unless there are any other levies on these airplanes, the Sheriff shall turn them over to the petitioner Intermediate Credit Corporation.