Keating, J. (dissenting).
We agree with the conclusion that in personam jurisdiction was not achieved in this case. We differ, however, with the majority’s interpretation of CPLR 5201 by which they conclude that rent payments due under a 20-year business lease are too contingent to meet the requirements of “ certainty ” expressed in the provision and, therefore, find future rents not attachable.
CPLR 6202 subjects to attachment any debt against which a money judgment may be enforced as provided in CPLR 5201. CPLR 5201 (subd. [a]) provides that “ any debt, which is past due or which is yet to become due, certainly or upon demand ” can be the subject of execution. This business lease exhibits *364 that certainty of existence required by the statute for a debt to be attachable. When the conditions in the lease are analyzed, it is apparent that the contingencies involved are insufficient predicates from which to conclude that future rent payments will not certainly come due.
The lease contains only three provisions which could possibly affect the duty of the lessee to make payments: destruction of the property, condemnation of the premises, or a breach of the covenant of quiet enjoyment.
The possibility of destruction of the premises is so remote as not to be a fair basis upon which to conclude that rent payments are contingent. Though we would not distinguish this case from another solely on the type of business conducted -or the premises occupied, it would be fair to note that mercantile establishments, such as the lessee in this case, pay the lowest insurance premiums for fire damage because of the infrequency of its occurrence in these establishments as compared with manufacturing concerns.
Though condemnation of the property is always possible, it is as unlikely as destruction by fire. Even in the case of condemnation, however, the lease in question does not permit the lessee to vacate, but only requires a modification in the rent payments when less than 9,500 square feet of the surrounding property is taken. The lease does permit the lessee to vacate if any part of the building is condemned.. The record discloses that the city did in fact condemn part of the surrounding property for the purpose of widening a street. Accordingly, the rent payments were reduced by $1.39 per month to account for the condemnation of approximately 114 square feet of frontage.
The only way in which the covenant of quiet enjoyment could have been breached would be the presence of someone asserting paramount title. The lease under examination required the lessee, who was the sole tenant of the premises, to maintain the property, pay all fire and landlord liability insurance, pay all utilities and take care of refuse collection. The lessor did not need any of the rental payments to defray the costs of operating and maintaining the property. Thus, the attachment would not bring about a diminution of income to the lessor which would cause him to be unable to maintain the building, thereby failing to perform a duty imposed by the lessee which would in turn *365 permit the lessee to vacate or withhold rent. Therefore, the only breach which would arise from the covenant would be an eviction due to someone’s asserting paramount title.
All the possible contingencies in this lease were not only exceedingly remote eventualities, but were equally outside the control of either the lessor or lessee. It is apparent from a reading of the provision that it is not every debt in which money is to become due which falls outside its purview and this should especially be the case where neither the creditor nor debtor has any control of remote contingencies.
As Judge Cakdozo noted many years ago: ‘ ‘ The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. * * * At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions ”. (Severnoe Securities Corp. v. London & Lancashire Ins. Co., 255 N. Y. 120, 123-124; emphasis added.)
The majority admit that “ On any ordinary analysis * * * future rents might be treated as a debt or as a form of income ”, (p. 358) and additionally note that no New York case has ever held that future rents were not leviable. The question is, therefore, open. The cases we are referred to, in support of the proposition that future rent is not attachable, are from other jurisdictions which were decided in a far different judicial climate from that existing today with reference to questions of jurisdiction. The logic of these opinions is not so persuasive that we should disregard the change in legislative and judicial attitude in the last 25 years. Though admittedly our own case law is not clear on this point, nonetheless it does point to a resolution of the problem.
Matter of Ryan (294 N. Y. 85) quoted by the majority is not in point since, as the court noted, ‘ ‘ In the case we are now deciding, the obligation to pay rent is, indeed, made contingent by the express provisions of the lease; for the lease as modified provided that if the trustees should sell the property before *366 the expiration of the lease they might at their option cancel the lease, and if the trustees as ‘ landlord ’ availed themselves of that option, no further payments would become due under the lease ” (id., p. 95). The court in addition noted (p. 96): “We may point out here that the surviving trustees and the remainder-man of the trust have not contended that the contractual obligation of the beneficiary to pay rent in the future is not contingent Thus the issue with which we are confronted was not before the court in Ryan.
When it is understood that an attachment in New York will not interfere with the transferability of the fee or prejudice the lessee in any respect we see no injustice in finding future rents subject to attachment in New York. Our assertion of jurisdiction will in no way usurp the prerogatives of a sister State’s court by affecting the title to property in New Mexico. The New York attachment does not become a lien on this foreign realty. The grantee’s right to rent if the property is sold will not be affected by the New York attachment. The transfer of the fee will simply put an end to the attachment. (Cf. Matter of Intermediate Credit Corp. v. Overseas Nat. Airways, 41 Misc 2d 522.) Thus the alienability of the foreign property is not affected.
The lessee will not be endangered by being required to make rent payments in New York under the attachment. The lessee is protected from either double payment of rent or eviction in New Mexico because, in any action commenced by the lessor, the tenant can defend the action by raising the New York attachment as a bar. The corollary of the Supreme Court’s view of the jurisdictional point in Harris v. Balk (198 U. S. 215) is the requirement that other States accord full faith and credit to any judgment under which the garnishee is required to pay the garnishor. (See Huron Corp. v. Lincoln Co., 312 U. S. 183.) The New Mexico attachment statute specifically provides that “ It shall be sufficient answer to any claim of the defendant against the garnishee founded on any indebtedness of such garnishee * * * for the garnishee to show that * * * under the judgment of the court in accordance with the provisions of this article ” the debt was paid into court. (N.M. Stat. Ann., § 26-2-32.)
*367 Of course, New York cannot bootstrap itself into acquiring proper jurisdiction by the simple expedient of asserting that the debt is subject to attachment. However, it is generally recognized that “ The situs of intangibles is in truth a legal fiction ” and that, therefore, only a proper juridical situs has to be determined. Though a covenant to pay rent runs with the land and, therefore, rent accruing under a lease is normally considered an incident of the leasehold, this fact alone should not be determinative of the legal situs of future rents. Notwithstanding the fact that future rents are an incident of the right of the lessee to possession of the leasehold this right may be severed from the property by an assignment. Thus the individual who has the right to receive rent may not be a resident of the locality where the property is situated. Since the right to receive rent does not always run with the land we see no reason to determine the situs of the debt by some outmoded notion, which heaps an additional legal fiction into a cauldron already boiling over with refinements.
We believe an important consideration to be that New Mexico would also find this property subject to attachment and, therefore, would have no grounds for consternation because of our action. The New Mexico statute permits an attachment of demands not yet due in like manner as demands already due. (N. M. Stat. Ann., § 36-7-1; garnishment may be had in any case in which an attachment would be proper. N. M. Stat. Ann., § 26-2-1.) The New Mexico garnishment provision was expanded in 1939 to permit attachment “ against the lands, tenements, goods, moneys, effects, credits and any right, title [,] lien or interest whether legal or equitable upon, in or to real or personal, tangible or intangible property * * * which could be reached upon execution or upon equitable proceedings in aid of execution, of the debtor in whosesoever hands they may be except such property as is now, or may hereafter be, specifically exempted from attachment or execution by law ” (N. M. Stat. Ann., § 26-1-4). The Dean of the New Mexico School of Law has stated that “ The purpose [of this provision] obviously is to authorize attachment of all non-exempt property interest's capable of conversion into money, but no question as to the precise reach of the writ has come before our Supreme Court [of New *368 Mexico](Vern Couutrymau, Attachment in New Mexico, Part I, Natural Resources Journal 303 [1061]; Part II? NiNuraJ Resources Journal 75, 76 [1963].)
Since we are in no way trammeling the New Mexican court’s right to affect the title to rea] property located there, affecting its transferability, or prejudicing the rights of the garnishee, we gee no reason not to bold this debt subject to attachment in New York.
Chief Judge Fulp and Judges Rurke, Scinnm and Jasw concur with Judge Rrejtel,- Judge RAmun dissents and votes to reverse in a separate opinion in which Judge Rergab concurs*
Order affirmed.