UNITED STATES of America,
Plaintiff,

v.

Arthur SWEENY, III, Christiane B. Sweeny, and Peter B. Sweeny, John Doe No. 1 to John Doe No. 10, inclusive, the last ten names being fictitious and unknown to plaintiff, the person and parties intended being those who may be beneficiaries, or have other interests in the two parcels of land on Stephen Drive described in the Complaint, Defendants.

No. 03 Civ. 1030(WCC).

United States District Court,
S.D. New York.

Feb. 21, 2006.

Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Plaintiff, Ross E. Morrison, Asst. United States Attorney of counsel.

Harold, Salant, Strassfield & Spielberg, White Plains, NY, for Defendants, Leonard I. Spielberg, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The United States (the "U.S.") brings this action on behalf of its agency, the Internal Revenue Services (the "IRS") under 26 U.S.C. §§ 7401, 7402 and 7403 against defendants Arthur Sweeny, III ("Mr. Sweeny"), his son Peter B. Sweeny ("Peter") and John Does 1–10, unknown persons who may have an interest in the subject property located at 92 Stephen Drive, Pleasantville, N.Y. (the "Property") (collectively the "defendants"). The U.S. commenced this action to: (1) reduce to judgment tax assessments made against Mr. Sweeny and his ex wife, Christiane B. Sweeny ("Mrs. Sweeny"), for unpaid taxes, penalties and interest; (2) set aside an allegedly fraudulent 1995 conveyance of Mr. Sweeny's remaining interest in the Property to Peter; and (3) foreclose on federal tax liens on the Property. Mrs. Sweeny died on April 4, 2004. The U.S. moves for partial summary judgment to reduce the tax assessments against Mr. Sweeny to judgment and declare a valid tax lien on the Property in favor of the U.S. The defendants cross-move for partial summary judgment for failure of the U.S. to join Mrs. Sweeny's successors in interest as necessary parties to the action. Defendants also move for partial summary judgment with respect to the portion of the Complaint seeking to set aside Mr. Sweeny's transfer of the Property to Peter, because Peter is allegedly a valid purchaser. For the reasons stated herein, the motion of the U.S. is granted and defendants' motion is denied.

### BACKGROUND

#### I. Mr. Sweeny's Income Tax Debt

Mr. Sweeny failed to timely file federal income tax returns for the six tax years ending December 31, 1986 through December 31, 1991 and the four tax years December 31, 1993 through December 31, 1996. (Pl. Rule 56.1 Stmt. ¶ 1; Defs. Rule 56.1 Stmt. ¶ 1.) As a result, based upon information furnished by his employers concerning his wages and tax withholdings during those tax years, the IRS made assessments against him for deficient tax payments. (Pl. Rule 56.1 Stmt. ¶¶ 2, 3.) It is undisputed that the amount of the assessments as well as the assessed balances, including accrued penalties, interest and/or additions are as follows:

| Tax Year | Date of Assessment | Amount of Assessment | Assessed Balance |
|---|---|---|---|
| 1986 | December 7, 1992 | $17,418.00 | $11,861.30 |
| 1987 | May 18, 1992 | $18,586.00 | $11,977.17 |
| 1988 | December 7, 1992 | $20,441.00 | $16,269.96 |
| 1989 | September 21, 1992 | $20,732.00 | $15,429.23 |
| 1990 | October 18, 1993 | $16,672.00 | $ 7,620.89 |
| 1991 | March 21, 1994 | $10,451.00 | $ 1,972.59 |
| 1993 | April 14, 1997 | $15,326.00 | $27,432.06 |

| 1994 | April 7, 1997 | $ 1,586.00 | $ 2,505.11 |
| 1995 | April 21, 1997 | $ 664.00 | $ 925.60 |
| 1996 | June 22, 1998 | $ 574.00 | $ 850.39 |

(Pl. Rule 56.1 Stmt. ¶¶ 4, 16; Defs. Rule 56.1 Stmt. ¶¶ 4, 16.)

The U.S. claims the IRS sent notices of the assessments and demands of payment; Mr. Sweeny did not respond. (Pl. Rule 56.1 Stmt. ¶¶ 5, 6.) He claims he was not notified until 1996 when the IRS telephoned him.[1] (Defs. Rule 56.1 Stmt. ¶ 5.) He then filed late tax returns, all dated August 26, 1996, for all the tax years. (Pl. Rule 56.1 Stmt. ¶ 7.) The tax returns indicated that Mr. Sweeny maintained outstanding tax liabilities for those tax years. (Id. ¶ 8.) Mr. Sweeny requested the IRS consider these late filed returns in recalculating his remaining balance, and the IRS complied with his request. (Id. ¶¶ 9, 10.) Mr. Sweeny never has paid the reduced deficiency assessments. (Id. ¶ 11.)

It is undisputed that, as of June 30, 2005, Mr. Sweeny owes a total of $206,120.94 in unpaid federal income taxes, interest and penalties. (Id. ¶ 20; Defs. Rule 56.1 Stmt. ¶ 20.) On or about March 14, 2000, Mr. Sweeny submitted an Offer to Compromise, in which he offered the IRS $10,000 to fully satisfy the assessments made against him. This offer was rejected. (Pl. Rule 56.1 Stmt. ¶¶ 21, 22.)

## II. Interest in the Property

Mr. and Mrs. Sweeny married in 1960, but divorced in 1991, at which time they entered into a separation agreement. (Id. ¶¶ 23, 24.) Under the separation agreement, the Property, wholly owned by Mr. Sweeny, would be owned by both as tenants in common with Mrs. Sweeny possessing a life estate in the Property and maintaining exclusive possession, but with Mr. Sweeny paying carrying costs. (Id. ¶¶ 25, 27, 31.) A deed was executed on June 18, 1991 to reflect this transfer. (Id. ¶ 26.) Defendants assert that in 1992, Mr. Sweeny defaulted on payment of the carrying costs of the Property and Peter made the payments on his behalf until 1995. (Defs. 56.1 Stmt. ¶¶ 31, 34.)

By deed executed on November 20, 1995, Mr. Sweeny transferred his interest in the Property to Peter. (Id. ¶ 28.) The deed indicated that this conveyance was in consideration of "[t]en dollars and other valuable consideration." (Id. ¶ 29 (citing Morrison Decl., Ex. 1 at 8).)

The U.S. commenced this action on February 14, 2003. Mrs. Sweeny, a Swiss citizen who had since moved back to Switzerland, passed away on April 4, 2004. (Pl. 56.1 Stmt. ¶ 35; Pl. Reply Mem. Supp. Mot. Summ. J. at 20.) On July 13, 2004, the U.S. filed a Suggestion of Death with regard to Mrs. Sweeny. (Pl. Reply Mem. Supp. Mot. Summ. J. at 20; Defs. Mem. Opp. Mot. Summ. J. at 4, Ex. A.)

## DISCUSSION

### I. Motion for Summary Judgment Standard

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the nonmoving party. Anderson,

---

1. Mr. Sweeny claims he "received notice of the assessments in 1996, when he received a phone call from the Internal Revenue Service." (Defs. Rule 56.1 Stmt. ¶ 5.) The date Mr. Sweeny received this phone call has not been indicated. The U.S. has not enumerated how often and in what manner it attempted to contact Mr. Sweeny regarding the assessments.

477 U.S. at 248, 106 S.Ct. 2505. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-movant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *Plaintiff's Motion for Partial Summary Judgment*

### A. *Reducing the Tax Assessment to a Judgment*

 If a taxpayer is liable to the IRS, the Government may proceed in district court to obtain a judgment for the amount assessed against the taxpayer. 26 U.S.C. § 7402(a). "It is well established that the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid and create a prima facie case of liability, such that the Government is 'entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct.'" *United States v. Chrein*, 368 F.Supp.2d 278, 282

(S.D.N.Y.2005) (citing *Chariot Plastics, Inc. v. United States*, 28 F.Supp.2d 874, 881 (S.D.N.Y.1998)). The burden is on the defendant to prove the invalidity of the tax assessment. *Pizzarello v. United States*, 408 F.2d 579, 583 (2d Cir.1969); *Chrein*, 368 F.Supp.2d at 282. "To defeat a motion for summary judgment, the taxpayer must not only show that the assessment is incorrect, but it must also prove the correct amount of the tax." *Chariot Plastics*, 28 F.Supp.2d at 882.

Defendants have not responded to the U.S.'s request for summary judgment on this issue and have therefore failed to meet their burden.[2] The IRS's calculations are presumptively valid and create a prima facie case for liability. Therefore, under 26 U.S.C. § 7402(a), this Court may reduce the IRS's assessment to a judgment.

### B. *Tax Lien On the Property*

██ ██ When the federal government asserts a tax lien on a property, the threshold inquiry "is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." *Aquilino v. United States*, 363 U.S. 509, 512, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). State law determines the legal interest that a taxpayer has in the property, but federal law governs "the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" *Id.* at 512–13, 80 S.Ct. 1277 (citations omitted). Section 6321 of the Internal Revenue Code provides that if a person neglects or refuses to pay any federal tax, a lien arises automatically in favor of the

2. In their Local Rule 56.1 Statement, defendants, in response to the U.S.'s statement that "[t]he IRS made these tax assessments based on information provided by Sweeny's employers concerning Sweeny's wages and tax withholding by the employers for those tax years," (Pl. Rule 56.1 Stmt. ¶ 3), indicate that this information is correct, "but Sweeny now believes that the assessments were incorrect in some respects." (Defs. Rule 56.1 Stmt. ¶ 3.) However, defendants provide no evidence to support this assertion and do not otherwise argue the propriety of the assessments in their papers.

United States against all property rights belonging to such person. *See* 26 U.S.C. § 6321. This lien arises on the date of assessment. *See* 26. U.S.C. § 6322. The lien imposed by § 6321 is not valid against a purchaser until notice complying with statutory requirements has been given. *See* 26 U.S.C. §§ 6323(a), (f).

### 1. *Purchaser for Value*

■ A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). Adequate and full consideration requires "consideration in money or money's worth having a reasonable relationship to the true value of the interest in the property acquired." 26 C.F.R. § 301.6323(h)–1(f)(3). " 'Money or money's worth' is defined in the regulation as including 'tangible or intangible property, services and other consideration reducible to a money value,' but excluding such things as 'love and affection . . . or any other consideration not reducible to a money value.' " *United States v. Morrell,* 137 F.Supp.2d 130, 136 (E.D.N.Y.2001) (citing § 301.6323(h)–1(a)(3)). The determination of whether consideration was "full and adequate," and if an individual is a "purchaser" are matters of federal, not state, law. *United States v. Phillips,* 715 F.Supp. 81, 84 (S.D.N.Y.1989) (citing *Cont'l Oil Co. v. United States,* 326 F.Supp. 266, 270–71 (S.D.N.Y.1971)).

■ The deed conveying the Property cites as consideration "Ten Dollars and other valuable consideration." (Morrison Decl., Ex. 5.) Both father and son stated

that ten dollars was never actually exchanged for the Property. (Morrison Decl., Ex. 1 at 48–50; Ex. 2 at 20–21.) Defendants claim that the Property was transferred to Peter in exchange for his payment of carrying costs in the past and his assumption of any future payments. (Defs. Mem. Opp. Mot. Summ. J. at 10.) The U.S. asserts that evidence of this oral agreement is barred by the parol evidence rule and statute of frauds.[3] (Pl. Reply Mem. Supp. Mot. Summ. J. at 6–11.)

### i. *Past Payments*

Courts within the Second Circuit have not addressed at length whether a transferee of property who obtains the property through an agreement based on past consideration is a "purchaser" under § 6323(a). In *United States v. Phillips,* the district court cited two other district court cases within the Third Circuit that "recognized that agreements founded on past consideration do not render the transferee of property a 'purchaser' under Section 6323(a)." 715 F.Supp. at 84 (citing *United States v. Pavenick,* 197 F.Supp. 257, 259 (D.N.J.1961) (finding the transfer of stock as repayment for a previous loan not full and adequate consideration) and *United States v. Franklin Fed. Sav. & Loan Ass'n,* 140 F.Supp. 286, 288 (M.D.Pa. 1956)). And at least one other district court within the Second Circuit has held that "past consideration in the form of . . . alleged payments to [defendant's] creditors cannot be deemed adequate and full consideration sufficient to render [the transferee] a purchaser within the meaning of section 6323." *United States v. Paladin,* 539 F.Supp. 100, 103 (S.D.N.Y.1982.)

---

3. Although, the U.S.'s argument may have merit, we will not address these issues because, regardless of whether the evidence of the oral agreement is permitted, defendants would be unsuccessful since past and future payments are inadequate consideration to make Peter a "purchaser" under § 6323.

We find these precedents persuasive. Past consideration is insufficient to render Peter a "purchaser" under the statute.

### ii. *Future Payments*

▮ "[A]n unenforceable promise of future support is not 'adequate and full consideration in money or money's worth' under any rational construction of the statute [§ 6323]." *Morrell*, 137 F.Supp.2d at 136. In *Morrell*, which is remarkably similar to the facts in this case, the court held that a promise of future support did not constitute fair consideration.[4] *Id.* at 136–37. "Courts have rejected repeatedly the argument that promises of future support constitute fair consideration within the meaning of Section 273." *Id.* at 137 (collecting cases). The promise to assume future payments is not adequate consideration. Therefore, Peter is not a "purchaser" as defined by § 6323 and the lien survives the purported transfer.

### 2. *Fraudulent Conveyance*

▮ The U.S. claims that under N.Y. DEBT. & CRED. L. §§ 273 & 276 Mr. Sweeny's conveyance is both constructively and actually fraudulent. N.Y. DEBT. & CRED. L. § 273 provides "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred

without a fair consideration." N.Y. DEBT. & CRED. L. § 273. Therefore, to establish a fraudulent conveyance under this statute, the government must demonstrate: (1) that there was a conveyance; (2) that the defendant would become insolvent as a result of the conveyance; and (3) there was no fair consideration for the conveyance. *United States v. McCombs*, 30 F.3d 310, 323 (2d Cir.1994). Under the N.Y. DEBT. & CRED. L. § 276, a conveyance is actually fraudulent if it was made with actual intent "to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

As discussed *infra* Part II.B.1., Peter is not a "purchaser" under § 6323 and, therefore, the tax liens remain attached to the Property. In light of this determination, it is not necessary to determine whether the conveyance was either constructively or actually fraudulent.

### III. *Defendants' Motion for Partial Summary Judgment for Failure to Join Necessary Parties*[5]

▮ Relying on FED. R. CIV. P. 19 and Internal Revenue Code § 7403, defendants claim that the portion of the Complaint seeking foreclosure of the Property should be dismissed because Mrs. Sweeny's successors in interest are indispensable parties to the action who have not

---

4. In *United States v. Morrell*, an adult son orally agreed to support his parents after they transferred assets to him. 137 F.Supp.2d at 132. The parents already had tax assessments against them at the time of the transfer. *Id.* at 131. The defendant son claimed that he was given the assets to support his ailing mother. *Id.* at 132. In assessing whether the son was a "purchaser" under § 6323, the Eastern District found that such an oral agreement was unenforceable under the statute of frauds. The court noted that the defendants conceded this point during the oral argument. *Id.* at 136.

5. Defendants also moved for summary judgment regarding the portion of the complaint seeking to set aside the conveyance from Mr. Sweeny to Peter. They argue that Peter is a valid purchaser because he "made payments on the subject premises both prior and subsequent to the transfer." (Defs. Mem. Opp. Mot. Summ. J. at 3.) However, as discussed *infra* Part II.B.1., Peter was not a valid purchaser of the Property. Therefore, we will not further consider this issue.

been joined in the suit. (Defs. Mem. Opp. Mot. Summ. J. at 4–5.) "Rule 19 defines what it means to be an indispensable party by setting forth 'a two step inquiry for determining whether an action must be dismissed for failure to join an indispensable party.'" *E.I. DuPont De Nemours & Co. v. Fine Arts Reprod. Co., Inc.*, No. 93 Civ. 2462, 1995 WL 312505 at *2 (S.D.N.Y. May 22, 1995) (quoting *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1123 (2d Cir.1990)). The first step is to determine whether the party must be joined, if feasible. *See Assoc. Dry Goods*, 920 F.2d at 1123. If a party is deemed necessary under the language of Rule 19 but cannot be joined due to infeasibility, then the second step is for the court "to assess whether or not, in equity and good conscience, the action should proceed in the necessary party's absence." *Id.* at 1124.

In considering a motion under Rule 19, the burden is on the moving party "to show the nature of the unprotected interests of the absent individuals ... and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence." 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, *Fed. Prac. & Proc.* § 1359 (3d ed.2005). In order to meet this burden "it may be necessary to present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Id.* If the initial assessment reveals the possibility that an unjoined party is required to be joined under Rule 19, the burden shifts to the opposing party to negate this conclusion. 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Fed. Prac. & Proc.* § 1609 (3d ed.2005).

### A. *Indispensable Parties*

■ The IRS Code provides that in an action brought to foreclose on a delinquent taxpayer's property, any person having interest in the property must be joined in the action. *See* 26 U.S.C. § 7403. Mrs. Sweeny possessed a tenancy in common in the Property and was therefore properly joined as a party. After her death, her successors in interest would have an interest in the Property and are indispensable parties to the foreclosure action.

### B. *Equity and Good Conscience*

■ After a court has determined that a party is indispensable, it must then consider whether "in equity and good conscience" the action can proceed with only the parties before it. FED. R. CIV. P. 19(b). To make this determination the statute provides factors for the court to consider:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

The interests underlying these factors have been summarized by the Supreme Court as follows:

> First, the plaintiff has an interest in having a forum.... Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.... Third, there is the interest of the outsider whom it would have been desirable to join.... Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

"The language of Rule 19(b) leaves the district court with 'substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute.'" *Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 (2d Cir.1984) (citing 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, *Fed. Prac. & Proc.* § 1604 at 45–46 (1972)); *Holland v. Fahnestock & Co., Inc.,* 210 F.R.D. 487, 494 (S.D.N.Y.2002). The court may take a flexible approach to this inquiry and consider other factors. *See Wolf v. Wolf,* No. 97 Civ. 6475, 1998 WL 67649, at *3 (S.D.N.Y. Feb.19, 1998). " '[T]he major focus is equity and good conscience, which permits the court to consider all circumstances bearing on the fairness or advisability of choosing one course over the other.'" *Id.* (quoting JAMES WM. MOORE, ET AL., *Moore's Federal Practice* § 19.05 (3d ed.1997)).

On July 13, 2004, after Mrs. Sweeny's death, the U.S. filed a suggestion of death, but never identified Mrs. Sweeny's successor(s) in interest nor attempted to substitute another party for her in the action. It is unclear who are Mrs. Sweeny's successors. Defendants assert that her intestate successors were made clear during Mr. Sweeny's deposition in which he indicated that he and Mrs. Sweeny had two children, Peter and Christiane Gorycki, and she never remarried. Defendants further assert that, under New York's Surrogates Court Practice, the U.S., as a creditor, could seek letters of administration because if Mrs. Sweeny were living she would be a proper party to the action.

Since Mr. and Mrs. Sweeny had a tenancy in common, the government could sell the entire interest in the property and retain only the proceeds from Mr. Sweeny's portion of the Property. *United States v. Kocher,* 468 F.2d 503, 506–07 (2d Cir.1972). This remedy would be adequate in the absence of any of Mrs. Sweeny's successors because after being identified they would still receive their portion of proceeds from the sale of the Property. The only person currently in possession of the Property is Peter. He is also a potential intestate heir and has already been made a party to the action. Although defendants have demonstrated the nature of the unprotected interests of the absent parties, they have failed to show how these parties, if any exist, would be injured or how any party before this Court would be disadvantaged by their absence. If the action were to be dismissed because of nonjoinder, the government would not have an adequate remedy because it could not collect the outstanding taxes. Therefore, defendants' motion is denied.

## CONCLUSION

For all of the foregoing reasons, the motion for partial summary judgment of plaintiff United States is granted and the cross-motion for partial summary judgment of defendants Arthur Sweeny, III and Peter B. Sweeny is denied.

SO ORDERED.